IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JACOBY D. MOODY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 2:20-cv-855-RAH-SMD ) |
| WARDEN GORDY, et al., | ) ) |
| Defendant. | ) ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.    INTRODUCTION**

Jacoby Moody, proceeding pro se, filed this action under 42 U.S.C. § 1983 while incarcerated at the Ventress Correctional Facility ("VCF"), in Clayton, Alabama.[1] He sues Warden Christopher Gordy and Captain Brian Thompkins for their alleged failure to protect him from an inmate assault in violation of his Eighth Amendment rights.[2] Doc. 1; *see also* Doc. 17.[3] For relief, Moody requests $10,000 in damages for the injuries he sustained during the assault, compensatory damages,[4] and compensation for minor

---

[1] During the pendency of this action Moody was released from custody. Doc. 24.

[2] Although Moody also named Officer Dennis Brown as a defendant, he was never served with the Complaint. *See* Fed. R. Civ. P. 4(m).

[3] All documents and attendant page numbers cited herein are those assigned by the Clerk of this Court in the docketing process.

[4] Moody also requests actual damages for his injuries. Doc. 1 at 5. However, actual damages are roughly synonymous with compensatory damages. *See McMillian v. F.D.I.C*, 81 F.3d 1041, 1055 n.15 (11th Cir.1996) (quoting 25 C.J.S. Damages § 2 ("'Compensatory damages' and 'actual

economic damage he incurred due to a loss of personal property from his inmate box.[5] Doc. 1 at 5.

Defendants filed an Answer, Special Report with supplements, and supporting evidentiary material addressing Moody's claims for relief. Docs. 13, 26, 28. In these filings, Defendants deny they acted in violation of Moody's constitutional rights. After reviewing the Special Report, the Court issued an Order on March 5, 2021, requiring Moody to respond to the report with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 15; see also Docs. 25, 27. The Order specifically cautioned that the "court may at any time [after expiration of the time for Moody to file a response] and without further notice to the parties (1) treat the [special] report, … and all supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response …, rule on the motion for summary judgment in accordance with the law." Doc.

---

damages' are synonymous terms ... and include[ ] all damages other than punitive or exemplary damages.").

[5] Moody's remedy, if any, regarding the loss of his property lies in the Alabama Code and the courts of Alabama. Under Ala. Code § 41-9-60 (1975), the State Board of Adjustment may consider claims against the State of Alabama or its agents through the filing of a claim with the State Board of Adjustment. *Smith v. Governor for Ala.*, 562 F. App'x 806, 817-18 (11th Cir. 2014) (holding that the Alabama Board of Adjustments, pursuant to Ala. Code § 41-9-60, *et seq.*, provides a meaningful post-deprivation remedy through which a state inmate may seek relief for the loss or denial of property even though a recovery may not be the equivalent of a § 1983 action). If the Board of Adjustment denies the inmate's claim, he or she may bring an action for compensation in the Alabama state courts. These available post-deprivation remedies under Alabama law are sufficient to satisfy due process. *Hudson v. Palmer*, 468 U.S. 517 (1984); *see also Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (explaining that "as long as some adequate post-deprivation remedy is available, no due process violation has occurred").

15 at 2. Pursuant to the March 5, 2021, Order, the Court now treats Defendants' Special Report as a motion for summary judgment and concludes the motion is due to be granted.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record showing a genuine dispute of material fact. *Id*. at 324. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts*." Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc*., 276 F.3d 1275, 1279 (11th Cir. 2001). Summary judgment also should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

3

In determining whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   FACTUAL BACKGROUND[6]

The following facts derive from Moody's verified Complaint[7] (Docs. 1, 17) and the sworn or verified evidentiary materials proffered by Defendants (Docs. 13-1 through 13-6; Docs. 26-1 through 26-2; Docs. 28-1 through 28-2).[8] Moody alleges that on March 19,

---

[6] The "facts" as set forth herein are merely for purposes of summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) (citation omitted) (explaining that "what we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[7] Moody originally filed his Complaint in the United States District Court for the Northern District of Alabama. In the Recommendation of the Magistrate Judge recommending transfer of the Complaint to this Court, it was noted that the language in the Complaint clearly indicated that Moody made additional allegations but inadvertently failed to attach the pages containing those allegations to his form Complaint. *See* Doc. 3, Doc. 1 at 4–5. On March 29, 2021, Moody submitted a "Notice" to the Court which contained the missing pages from his Complaint. Doc. 17. Thereafter the Court directed Defendants to supplement their Special Report as necessary in light Moody's March 29, 2021, filing, including affidavits and any other relevant documents or records not previously submitted. Doc. 25.

[8] Moody signed the Complaint (Doc. 1) under penalty of perjury. Therefore, the Court will treat this pleading as evidence when ruling on the motion for summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019). Although the "Notice" containing the pages purportedly missing from Moody's Complaint is not sworn or verified, under the circumstances of that filing, and

2020, several inmates attacked him with a knife as he slept nearly severing his right foot and causing deep lacerations to his right arm and back. Doc. 1 at 5; Doc. 17 at 2–3. Because of the injuries he sustained, Moody was transported to a medical facility in Dothan for treatment of his injuries. Doc. 17 at 2. Moody maintains the cube operator, who can see the entire dormitory from the cube, was asleep at the time of the assault and that the guard assigned to rove the dorm had left his post and was not present when Moody was attacked. *Id*. at 4. Moody further contends that despite knowing about a rise of violent incidents at VCF by almost 50 percent and an influx of contraband brought in to the facility by correctional staff, Warden Gordy did not take measures to protect inmates from these security issues. *Id*. at 4. After Moody returned to VCF, Captain Thompkins advised him he had been attacked by several inmates with a free-world knife, but Moody complains that neither Warden Gordy nor Captain Thompkins would tell him why the incident occurred. Id. at 2–3.

Defendants' evidentiary submissions include the institutional incident report detailing the assault:

> On March 19, 2020, Basic Correctional Officer Dennis Brown was assigned as F4-Dormitory rover at Ventress Correctional Facility. At approximately

---

because consideration of the document will not affect the outcome, the Court will construe Moody's pro se Notice liberally and consider the statements therein as having been properly sworn or verified. Moody's response to Defendants' Special Report (Doc. 16), however, is unsworn and not signed with an averment it was made under penalty of perjury. *See* 28 U.S.C. § 1746. Therefore, the Court does not treat its factual assertions as evidence on summary judgment. *Sears,* 922 F.3d 1206; *see also Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (*citing Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003), *as amended*, (Sept. 29, 2003) (holding that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment.").

> 6:15 pm, inmate Jacob Moody, B/290864, (F4-31B, No ISR), walked to F4-Dormitory door and Officer Brown noticed that he was bleeding from his right arm and right leg. Officer Brown notified Correctional Sergeant Joshua Cooper of the incident. Sergeant Cooper entered F-Dormitory and escorted inmate Moody to the Health Care Unit via the stretcher. Licensed Practical Nurse Danielle Vincent called the ambulance and notified Sergeant Cooper that inmate Moody would need to be transported to Southeast Health Center for further treatment via ambulance. Sergeant Cooper notified Correctional Captain Brian Thompkins of the incident. At approximately 6:35 pm, Licensed Practical Nurse Teretha Spann began completing a medical assessment tool on inmate Moody. At approximately 6:37 pm, Nurse Spann completed the medical assessment tool on inmate Moody. At approximately 6:42 pm Clayton Rescue Squad three arrived at Ventress Correctional Facility. Ashlee Nadolny was the driver and Paul Gaulidge Sr. was the paramedic. After a brief look Paramedic Gaulidge informed Sergeant Cooper that inmate Moody would be transported to Southeast Health Center via helicopter. At approximately 7:00 pm, Clayton Rescue three was exited with inmate Moody. Correctional Officer Saterro Hardy pulled security in the ambulance and the helicopter, Correctional Officer Maurice Womack followed in Unit 1943. Sergeant Cooper questioned several people in F4-Dormitory[.] [A]ll inmates stated that they didn't see anything but that inmate Moody was just walking around with his pants down masturbating. Two weapons were confiscated. After further investigation and questioning several more inmates no new information was revealed. On March 21, 2020, at approximately 11:16 pm, Correctional Officers Brittani Grant and Nathanial Williams arrived at Ventress Correctional Facility with inmate Moody. Inmate Moody was reassigned to the Health Care Unit Ward for further medical treatment and observation.

Doc. 13-1 at 1.

Moody's body chart (medical examination) completed on March 19, 2020, reflects Moody gave no statement to medical staff. Doc. 13-2 at 3. On examination, medical staff observed that Moody had "2 lacerations to R leg approximately 7 inches long/4 inches wide, full thickness laceration to R forearm." *Id*. Pressure dressings were applied to Moody's injuries while arrangements were made for his transport to an outside medical facility. *Id*. at 3. After Moody returned to VCF on March 21, 2020, he was placed in the

medical unit for continued medical care, treatment, and observation through March 24, 2020. *Id.* at 13–30. In their affidavits, Warden Gordy and Captain Thompkins testify they were not present in Dorm 4F on the date and time Moody was assaulted. Docs. 28-1, 28-2.

## IV.   DISCUSSION

Moody claims Defendants failed to protect him from the inmate attack in violation of his Eighth Amendment rights because of their failure to provide adequate security and to take sufficient measures to ensure his safety and well-being at the institution. Doc. 1 at 4; Doc. 17 at 4. Because of the assault, Moody maintains he almost lost his life. Doc. 17 at 5. Defendants contend, *inter alia*, that Moody's claims lack merit, Defendants did not violate Plaintiff's constitutional rights, and Defendants are entitled to immunity in their official and individual capacities. *See* Doc. 13.

### A.   Sovereign Immunity

Moody sues Defendants in their individual and official capacities. Defendants, however, are entitled to sovereign immunity from monetary damages in their official capacity. Official capacity suits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his or her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996).

Regarding the claims now being asserted by Moody, it has been recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has

7

Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (*citing Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, Defendants are entitled to sovereign immunity as to all claims seeking monetary damages against them in their official capacities. *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]."); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials in their official capacities are protected under the Eleventh Amendment from suits for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B.     Qualified Immunity

Qualified immunity qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if the underlying conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citation and internal quotation marks omitted).

To receive qualified immunity, a defendant first must prove that he or she was acting within the scope of discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority when the challenged conduct occurred. The burden therefore shifts to Moody to present evidence that Defendants are not entitled to qualified immunity. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

For an official to lose qualified immunity, Moody must show both that that the defendant committed a constitutional violation and that the constitutional right the defendant violated was "clearly established." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted); *see also Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. ... In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and internal quotation marks omitted) (alteration in original). The Court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241-42). "Both elements of this test must be present for an official to lose qualified immunity." *Brown,* 608 F.3d at 734.

### C. Deliberate Indifference

#### i. Standard of Review

"[A] prison official's duty under the Eighth Amendment is to ensure reasonable safety, … a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (citations and internal quotation marks omitted); *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (explaining that "it is well settled that a prison inmate has a constitutional right to be protected … from physical assault by other inmates."). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834; *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016). The Eleventh Circuit has consistently "stress[ed] that a prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313 (11th Cir. 2005) (citations and internal quotation marks omitted). Prison officials only violate the Eighth Amendment duty to protect prisoners from attack when they show "'deliberate indifference' to a substantial risk of serious harm." *Farmer*, 511 U.S. at 836; *see also Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citation and internal quotation marks omitted) (holding that "a prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if [the official] is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury.").

10

To survive summary judgment on an Eighth Amendment failure-to-protect claim, a plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quoting *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir.1995)). In analyzing such claim, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [prison official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). Whether a "strong likelihood" objectively exists cannot be based on hindsight but instead "is a prospective determination of what might happen based upon events that have already occurred." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (holding that "a substantial risk of serious harm, is evaluated using an objective standard. … The mere fact that an event takes place does not indicate how likely it was to occur.").

The deliberate indifference standard involves an objective and a subjective component. *Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1099 (11th Cir. 2014). In analyzing the first component, an inmate must first show "an objectively substantial risk of serious harm . . . exist[s] … Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001). As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838).

11

In sum,

> [u]nder the objective component, the plaintiff must demonstrate "a substantial risk of serious harm." [*Farmer*, 511 at 834]. . . . Under the subjective component, the plaintiff must prove "the defendants' deliberate indifference" to that risk of harm by making three sub-showings: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Lane* [*v. Philbin*, 835 F.3d 1302, 1308 (11th Cir. 2016)], (quotation omitted). . . . The [relevant] inquiry . . . [is] whether the defendants "disregard[ed]" the risk "by conduct that is more than mere negligence," *id*. (quotation omitted)—or more simply stated, whether they "recklessly disregard[ed] that risk," *Farmer,* 511 U.S. at 836, 114 S.Ct. 1970.

*Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020).

A defendant's subjective knowledge of the risk must be specific to that defendant. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (explaining that "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference."). Prison officials must also "possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Marbury*, 936 F.3d 1236 (citations and internal quotation marks omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. at 1238 (citation and internal quotation marks omitted). Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (citation and internal quotation marks omitted).

        **ii.**     **Failure to Protect or Provide Adequate Security**

Defendants deny they acted with deliberate indifference to Moody's safety. Captain Thompkins testifies that after being informed by prison staff that Moody had been cut

inside Dorm F4, he went to the medical unit where he tried to interview Moody about the incident, but Moody refused to make a statement. Doc. 13-4 at 1. Captain Thompkins also interviewed a number inmates in the dorm who reported that several inmates assaulted Moody, but no one would reveal the identities of Moody's attackers.[9] *Id.* at 1–2. After Moody returned to VCF from the outside medical facility, Captain Thompkins tried to interview him again but he refused to cooperate with the investigation. *Id.* at 2.

Warden Gordy, who was transferred to VCF on July 16, 2019, instituted several additional security measures at VCF including increased protocols to control inmate movement around the facility, increased security staff in Dorms E and F (the population dorms), increased searches of inmates, staff and visitors, and increased accountability of inmates and staff regarding violations of rules and regulations. Doc. 13-3 at 2–3. Warden Gordy denies any factual basis exists for Moody's contention of an increase in violent incidents at VCF by 50% or problems with correctional staff bringing in contraband. Doc. 26-1 at 1–2.

Both Warden Gordy and Captain Thompkins testify they were not present in Moody's dorm at the time of the assault and deny any knowledge of either the cube operator in Moody's dorm being asleep or the dorm rover being absent from his post at the time of the incident. Docs. 13-4, 26-1, 28-2. More important, Warden Gordy and Captain Thompkins state they had no information or knowledge that Moody feared for his safety

---

[9] Defendants state that prior to the incident, inmates reported that Moody had smoked an unknown substance and had been walking around the dorm with his pants down masturbating and making lewd gestures on several inmates. Docs. 13-3, 13-4.

or that a substantial risk of harm existed to Moody before he was assaulted nor were they aware of any facts which indicated a substantial risk of serious harm existed to Moody at the time of the assault. Docs. 28-1, 28-2.

Here, Moody presents no evidence that there existed "an objectively substantial serious risk of harm" to him before the March 19, 2020, assault. He makes no allegation that prior to the attack he complained to any prison official, or made any prison official aware, that he was in danger of being assaulted by a fellow inmate nor does Moody indicate he knew he was in any danger prior to the assault. *See* Docs. 1, 17. And Moody's own submissions show a reliance on Defendants to tell him why the attack occurred. *See* Doc. 17 at 3 ("The Warden, nor the Captain is yet to tell inmate Moody what happen to him, and why."). Further, the undisputed record shows Defendants had no information of any threat to Moody from another inmate from which they could infer that a substantial risk of harm existed to him before the challenged incident. *Carter*, 352 F.3d at 1349, 1350 (explaining that "there must be much more than mere awareness of [a] ... generally problematic nature [of another inmate].... [A] generalized awareness of risk ... does not satisfy the subjective awareness requirement."). Instead, the evidence reflects that the altercation occurred without notice or provocation. Moody has also not shown that the conditions under which he was incarcerated presented a "substantial risk of harm" to him, *Farmer*, 511 U.S. at 834, to which Defendants responded in an objectively unreasonable manner. *Marsh*, 268 F.3d at 1028–1029. His conclusory allegations of unsafe and unsecure conditions are insufficient.

Even had Moody satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any Defendant subjectively knew of a risk of harm to him posed by any inmate. *Caldwell*, 748 F.3d at 1099-1100 (explaining a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Moody's contention that Warden Gordy knew violent incidents had increased at VCF making it unsafe is not evidence this defendant was subjectively aware of any substantial risk of serious harm to Moody at the time of the incident. *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (holding that "because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure to protect] claim fails."). Further, Moody presents no direct facts, as opposed to conclusions, to support his general allegations regarding an increase in violence and security issues at VCF nor does he show that these conditions were contributing factors to the March 19, 2020, attack. *See Farmer*, 511 U.S. at 838. A prison is an inherently dangerous place which is why the law requires a plaintiff asserting an Eighth Amendment violation to show the defendants had knowledge of a "strong likelihood, rather than a mere possibility" of injury. *Brown*, 894 F.2d at 1537 (citations and quotation omitted).

Here, no evidence has been presented that any Defendant, or Moody himself, knew he was at risk of being attacked by other inmates. There is no evidence any defendant knew specific facts from which an inference could be drawn that a substantial risk of harm existed to Moody, that Defendants actually drew this inference, and, thereafter, ignored the known

15

risk. Because Moody has not presented evidence that Defendants were aware or had "actual knowledge" that he faced a substantial risk of harm, he fails to satisfy the subjective element of his Eighth Amendment claim. *See Curry v. Crist*, 226 F.3d 974, 979 (8th Cir. 2000) (affirming summary judgment where a prisoner was injured during a surprise attack by another inmate). Accordingly, Defendants are entitled to qualified immunity and summary judgment is due to be granted in their favor on Moody's failure to protect claim. *See Celotex Corp.*, 477 U.S. at 322.

**D.     Respondeat Superior**

In the event Moody alleges that Warden Gordy and Captain Thompkins are liable to him in their supervisory positions for the actions or omissions of their subordinates based on a theory of respondeat superior, he is entitled to no relief. The law is settled that supervisory officials cannot be held vicariously liable in § 1983 actions. *See, e.g., Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396-97 (11th Cir. 1994). As explained by the United States Supreme Court:

> … Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of respondeat superior [or vicarious liability] … . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted); *see also Cottone*, 326 F.3d at 1360 (holding that "supervisory

16

officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability").

Liability could attach to Defendants only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions … and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360; *see also Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). On this record, it is clear that neither Warden Gordy nor Captain Thompkins participated or had direct involvement in the underlying events. To establish a sufficient causal connection without direct participation, a plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a … custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). After careful review of the pleadings and evidentiary materials, the Court concludes that Moody fails to present any such evidence. Defendants are therefore entitled to qualified immunity and summary judgment is due to be granted in their favor on any claims asserting respondeat superior or vicarious liability.

## V. CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS that:

1. Defendants' Special Report (Doc. 13) be CONSTRUED as a Motion for Summary Judgment.

2. The Motion for Summary Judgment (Doc. 13) be GRANTED in favor of Defendants on all claims.

3. This case be DISMISSED with prejudice.

Further, it is ORDERED that by **February 6, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3–1.

DONE this 23rd day of January, 2024.

    /s/ Stephen M. Doyle
  STEPHEN M. DOYLE
  CHIEF UNITED STATES MAGISTRATE JUDGE